IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY WICKENKAMP

Plaintiff,

3:14-CV-1646-PK

FINDINGS AND
v.                                                                    RECOMMENDATION

AC3, INC., MARILYN PRESTON SUAREZ,
FIRST AMERICAN TITLE COMPANY, OLD
REPUBLIC TITLE INSURANCE COMPANY,
BRUCE HAMPTON, VENESE HAMPTON,
SCOTT HAMPTON, CHARLES WIKSTROM,
RAHN HOSTETTER, JONEL RICKER, JODI
RIGGS, BILL BUSHLEN, CHARLENE
WIKSTROM, CAITLIN HOSTETTER, D.
ZACHARY HOSTETTER, and EFRAIN SUAREZ,

Defendants.

PAPAK, Magistrate Judge:

Plaintiff *pro se* Mary Wickenkamp filed this action against defendants AC3, Inc.

("AC3"), Marilyn Preston Suarez ("Marilyn"), and First American Title Insurance Company

Page 1 - FINDINGS AND RECOMMENDATION

("FATIC") on October 16, 2014. Wickenkamp amended her complaint effective April 2, 2015, adding as additional defendants First American Title Company ("FATC"), Old Republic Title Insurance Company ("ORTIC"), Bruce Hampton ("Bruce"), Venese Hampton ("Venese"), Scott Hampton ("Scott" and, collectively with Bruce and Venese, the "Hamptons"), Charles Wikstrom ("Charles"), D. Rahn Hostetter ("Rahn"), Jonel Ricker, Jodi Riggs, Bill Bushlen, General Land Office ("GLO"), and Charlene Wikstrom ("Charlene" and, collectively with Charles, the "Wikstroms"), and amended her complaint a second time on May 14, 2015, abandoning her claims to the extent alleged against FATC and GLO and adding Caitlin Hostetter ("Caitlin"), D. Zachary Hostetter ("Zachary" and, collectively with Rahn and Caitlin, the "Hostetters"), and Efrain Suarez ("Efrain" and, collectively with Marilyn, the "Suarezes") as additional defendants.[1] By and through her second amended complaint, Wickenkamp alleges defendants' liability in thirteen separately pled claims as follows: (i) the liability of defendants FATC and AC3 to Judith Trackwell ("Judith") under Oregon common law for breach of fiduciary duty in connection with an "exchange-facilitator contract" executed in 2005, (ii) the liability of defendants FATC and AC3 to Judith under Oregon common law for breach of the exchange-facilitator contract, (iii) the liability of defendants FATC and AC3 to Judith under Oregon common law for breach of the covenant of good faith and fair dealing implied in a "title-insurance contract" executed in 2005, (iv) the liability of defendants FATC and AC3 to Judith under Oregon common law for breach of the title-insurance contract, (v) the liability of defendant AC3 to Judith under Oregon common law for breach of an "escrow contract" executed in 2005, (vi) the liability of defendant

---

[1] Certain of Wickenkamp's allegations suggest that she may have intended, in addition, to allege one or more claims against a person identified as Jeff Edison, but she has not done so.

AC3 to Judith under Oregon's Unfair Trade Practices Act ("UTPA"), Or. Rev. Stat. 646.608(u), for unfair trade practices taking place from 2005 to 2013, (vii) the vicarious liability of defendant FATC to Judith under the UTPA for conduct of Marilyn and Riggs taking place between April 1 and October 23, 2013, (viii) the liability of Marilyn to Judith for the complained-of conduct of AC3 on an *alter-ego* theory, (ix) the liability of defendants AC3, Marilyn, and ORTIC to Judith under Oregon's antitrust law, Or. Rev. Stat. 646.730 and 646.780, (x) the liability of defendants Marilyn, Ricker, Rahn, Zachary, Bushlen, and the Hamptons to Judith under Oregon common law for conspiracy to interfere with economic relations in connection with Judith's operation of a ranch she purchased in 2005, (xi) the liability of defendants the Suarezes, the Hostetters, the Hamptons, Riggs, and the Wikstroms to Judith under Oregon common law for conspiracy to interfere with economic relations in connection with the 2013 auction and sale of the ranch Judith purchased in 2005, (xii) the liability of defendants Rahn, the Suarezes, Bruce, and Ricker to Judith for racketeering in violation of 18 U.S.C. § 1961(c), and (xiii) the liability of defendants the Wikstroms, Zachary, Caitlin, Vanese, Scott, Bushlen, Efrain, and Riggs to Judith for racketeering in violation of 18 U.S.C. § 1961(d). Wickenkamp further alleges that she is Judith's assignee and therefore the real party in interest for purposes of all of the foredescribed claims, and in support of that allegation offers as an exhibit to her second amended complaint a document styled as an "Assignment of Claims" signed by the Trackwells and purporting to assign "all right title and interest" in claims belonging to the Trackwells' bankruptcy estate to Wickenkamp "in order that she may prosecute and recover all such claims for the benefit of the [Trackwells'] bankruptcy estate and remit the proceeds of such claims to said estate." The Assignment of Claims recites no consideration tendered by Wickenkamp to the Trackwells in

Page 3 - FINDINGS AND RECOMMENDATION

exchange for such assignment. Wickenkamp seeks damages in an amount "believed to be at this time . . . of $7,000,000." This court has jurisdiction over Wickenkamp's federal claims pursuant to 28 U.S.C. § 1331 and may properly exercise supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367; in addition, according to the allegations of Wickenkamp's second amended complaint, this court further has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the complete diversity of the parties and the amount in controversy.

Now before the court are FATC's motion (#41) to dismiss and request for judicial notice and defendants AC3's and Marilyn's motion (#44) to dismiss and request for joinder in FATC's motion to dismiss and request for judicial notice. I have considered the motions, all of the pleadings and papers on file, and oral argument on behalf of the parties. For the reasons set forth below, the moving defendants' motions should be granted in part and denied in part as discussed below, and:

(i)     all of Wickenkamp's claims asserted herein should be dismissed without prejudice for lack of standing;

(ii)    in the alternative, each of Wickenkamp's claims to the extent not premised on Judith's purchase of the ranch should be dismissed without prejudice on judicial estoppel grounds, and each of her claims to the extent premised on Judith's purchase of the ranch should be dismissed with prejudice as incurably time-barred; or

(iii)   in the further alternative, Wickenkamp's antitrust claim should be dismissed without prejudice on merits grounds; and, to the extent that any of Wickenkamp's claims as to which she has standing and faces no judicial estoppel barrier survives

Page 4 - FINDINGS AND RECOMMENDATION

dismissal with prejudice, Wickenkamp should be directed to amend her pleading to restate such claim in a manner compliant with Federal Civil Procedure Rule 8(a) and to effect service within thirty days on any defendant named in such claim that has not yet been served.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to

Page 5 - FINDINGS AND RECOMMENDATION

dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## REQUEST FOR JUDICIAL NOTICE

By and through its motion, in which AC3 and Marilyn join, FATC requests that the court take judicial notice of seven pleadings, court filings and court orders issued in connection with proceedings in which Judith, Lloyd Trackwell Jr. ("Lloyd Jr."), Lloyd Trackwell, Sr. ("Lloyd Sr. and, collectively with Judith, the "Trackwells"), and/or Wickenkamp were parties. Wickenkamp does not object to the court taking judicial notice of these pleadings, filings, and orders.

The pleadings, filings, and orders at issue are as follows:

1.  Third Amended Complaint in *Judith Trackwell v. Donald Prescott Hubbard, et al.*, United States District Court for the District of Oregon, Case No. 06-CV-90-ST (Docket No. 36);

2.  Arbitrators Opinion and Award in *Judith Trackwell v. Donald Prescott Hubbard, et al*, ASP Case No. 0703212-2, issued by the Arbitration Service of Portland (Docket No. 63);

3.  Civil Docket in *Judith Trackwell v. Donald Prescott Hubbard et al.*, Case #2:06-CV-00090-AA;

4.  Complaint in *Judith Trackwell v. AC3, Inc., et al.*, Wallowa County Circuit Court Case No. 09-06-13194;

5.  Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Third Amended Plan of Reorganization in *In re Lloyd Ray Trackwell, Sr.*

> *and Judith Christine Trackwell*, United States Bankruptcy Court, Western
> District of Missouri, Case No. 09-61596-abf11 (Docket No. 293);

6.  Order Approving Purchase and Sale Agreement; Authorizing and
    Directing the Sale of the Imnaha River Rand, Free and Clear of Liens,
    Claims, Encumbrances and Interests; and Granting Related Relief in *In re
    Lloyd Ray Trackwell, Sr. and Judith Christine Trackwell*, United States
    Bankruptcy Court, Western District of Missouri, Case No. 09-61596-
    abf11; and

7.  Opinion and Order in *Bruce Hampton, et al v. Fred Steen, et al*, Case No.
    12-cv-00470-AA (Docket No. 232).

Each is a fit matter for judicial notice. *See* Fed. R. Evid. 201. The court may therefore properly

take judicial notice of relevant information in those documents, and I do so in connection with

these Findings and Recommendation.

I further take judicial notice that on July 15, 2009, the Trackwells filed for Chapter 11

bankruptcy in the Bankruptcy Court for the Western District of Missouri, that on August 3, 2009,

the Trackwells filed a schedule of assets belonging to the Trackwells' bankruptcy estate, that the

schedule of assets included a "Cause of action related to actions involved in Judith Trackwell's

purchase of [the Imnaha River] Ranch in Oregon" as against AC3 and the same cause of action as

against FATC, and that the schedule of assets does not list any cause of action against any other

defendant herein, and was never amended to include any other cause of action against any

defendant herein. *See In re Trackwell*, Case No. 09-61596 (D. W. Mo. Aug. 3, 2009). I further

recommend that the court take judicial notice that on September 13, 2010, the Bankruptcy Court

for the Western District of Missouri approved the Trackwell's Chapter 11 bankruptcy plan,

ordering *inter alia* as follows:

> Notwithstanding the entry of an Order of Confirmation, **the Debtors** shall
> continue as Debtors-in-Possession until the entry of a final decree closing this

Chapter 11 case; **shall have all the rights and powers of a trustee serving in a case under this Chapter of the Bankruptcy Code; shall retain and remain in possession after confirmation of this Plan of all causes of action as they may have** under the Bankruptcy Code; and as **Debtors-in-Possession shall be authorized to prosecute such actions as fully and completely as if the same were being prosecuted by a Trustee in Bankruptcy**.

*In re Trackwell*, Case No. 09-61596 (D. W. Mo. March 16, 2010) (emphasis supplied).

I further take judicial notice of the docket and filings in *Judith Trackwell v. Donald Prescott Hubbard, et al.*, United States District Court for the District of Oregon, Case No. 06-CV-90-ST.

## FACTUAL BACKGROUND[2]

In May 2005, Lloyd Jr. entered into an agreement (the "Hubbard/Trackwell agreement") to purchase a ranch in Wallowa County, Oregon (the "Imnaha River ranch") from its then-owners (Donald Hubbard and Dorothy Hubbard, who collectively owned an undivided 20% interest in the property, and the Hubbard Charitable Trust, which owned the remaining 80% interest in the property) for $2.5 million, of which $2 million was to be paid in cash and the remaining $500,000 was to be paid via promissory note. Immediately thereafter, Lloyd Jr. assigned his rights and obligations under the Hubbard/Trackwell agreement to Judith.

The Hubbard/Trackwell agreement contained a provision asserting that the Imnaha River ranch property had no past "non-resource uses." In addition, the sellers' disclosures, which were made through Jon Gorsline who acted as the sellers' real estate broker, stated that there were "no dumps-no exceptions" on the Imnaha River ranch property. Gorsline was at all material times a

---

[2] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of plaintiff Wickenkamp's complaint, of any matters incorporated by reference therein, and of any matters properly subject to judicial notice in the light most favorable to Wickenkamp.

director of the Community Bank of Joseph, Oregon, which held a deed of trust on the Imnaha River ranch and was anxious for the sale to Judith to go through in order to ensure that its deed was paid.

Judith intended to use $2 million in proceeds from the sale of real property located in Nebraska to satisfy the cash portion of her payment obligations under the Hubbard/Trackwell agreement, in that manner effecting the purchase of the Imnaha River ranch as a "like-kind exchange" of property under 26 U.S.C. § 1031. Judith contacted FATC for purposes of engaging it to serve as the "exchange facilitator" in connection with the Section 1031 like-kind exchange, and at approximately the same time contacted AC3 for purposes of purchasing title insurance from it and of engaging it to serve as her escrow closing agent in connection with the purchase of the Imnaha River ranch. At that time, and at all material times "through at least October 30, 2009," AC3 and its principal, Marilyn, acted as FATC's agents. At all material times, AC3 was the only company providing title insurance in Wallowa County.

On or around June 1, 2005, Judith entered into a contract (the "exchange-facilitator contract") with FATC, pursuant to which FATC agreed to serve as the Section 1031 exchange facilitator in connection with her like-kind exchange of real property located in Nebraska for the Imnaha River ranch in Wallowa County. FATC advised Judith that, in effecting the exchange, it would be working with its agent, AC3.

Also on or around June 1, 2005, Judith entered into a contract (the "title-insurance contract") with AC3 and FATC, pursuant to which FATC agreed to issue a title insurance policy to Judith in connection with her purchase of the Imnaha River ranch and to issue a title commitment report on the property. By and through the title-insurance contract, FATC promised

to pay the costs of defense should it prove necessary to defend the title, and further promised to

indemnify Judith for any loss or damage she incurred as a result of any defect in title. With

specific regard to the duty to defend, FATC promised by and through the title-insurance contract

as follows:

> Upon written request by the Insured, and subject to the options contained in
> Section 5 of these Conditions and Stipulations, [FATC], at its own cost and
> without unreasonable delay, shall provide for the defense of an Insured in
> litigation in which any third party asserts a claim covered by this policy adverse to
> the Insured, but only as to those stated causes of action alleging . . . matters
> insured against by this policy. [FATC] shall have the right to select counsel of its
> choice (subject to the right of the Insured to object for reasonable cause) to
> represent the Insured as to those stated causes of action. It shall not be liable for
> and will not pay the fees of any other counsel.

Section 5 of the title-insurance contract provides that FATC could satisfy its duty to defend under

the contract by "pay[ing] or tender[ing] payment of the Amount of Insurance under th[e] [title-

insurance contract] together with any costs, attorneys' fees, and expenses incurred by the Insured

Claimant that were authorized by the Company up to the time of payment or tender of payment

and that the Company is obligated to pay."

Apparently by and through that same contract – but Wickenkamp's allegations are unclear

on this point – AC3 agreed to serve as Judith's closing agent for escrow purposes and to serve as

trustee on the deed of trust securing the contemplated $500,000 promissory note (the "escrow-

closing agreement").

At all material times, three waste dumps were located on the Imnaha River ranch, one of

which had been specifically designated as such by Wallowa County since 1971. Also at all

material times, FATC, AC3, and Ricker (who served as attorney for AC3, for the Hubbards, and

for the Hubbard Charitable Trust both in general and in specific connection with the

Page 10 - FINDINGS AND RECOMMENDATION

Hubbard/Trackwell agreement) all had both actual and constructive knowledge of the existence of the dumps on the Imnaha River ranch. None of these parties disclosed the existence of the dumps to Judith prior to the date the transaction closed. Moreover, on June 14, 2005, AC3 issued a preliminary title report to Judith regarding the Imnaha River ranch which revealed that the Imnaha River ranch was subject to a deed of trust in favor of Community Bank of Joseph, Oregon, securing a promissory note signed by the Hubbards in the approximate amount of $650,000, but did not disclose the existence of the dumps. In addition, no party disclosed to Judith that Ricker represented both the sellers and the title company/closing agent in connection with the transaction, or that Gorsline's bank had an interest in seeing the sale to Judith consummated.

In or around early October 2005, Suarez and AC3 accepted a deed to the Imnaha River ranch from Ricker (acting in his capacity as attorney for the Hubbards and for the Hubbard Charitable Trust) knowing that the deed was defective in that it had been signed on behalf of the Hubbard Charitable Trust by Donald Hubbard (who was not qualified to serve as trustee for the trust) rather than by Colin Lindsey (the only person qualified to act as trustee for the trust).

On October 17, 2005, the parties closed the Imnaha River ranch transaction. Judith signed the closing papers in AC3's offices with Marilyn present. Marilyn refused Judith's request to be afforded an opportunity to inspect the documentation relating to the sale and request to be provided with copies of the closing documents. Marilyn did not disclose to Judith the defect in the deed to the Imnaha River ranch. Following Judith's execution of the closing documents, Marilyn advised FATC that the transaction had closed. FATC then took steps to complete the Section 1031 like-kind exchange.

Immediately after the transaction closed, Marilyn issued the Hubbards a deliberately fraudulent I.R.S. Form 1099, for the purpose of assisting them in tax fraud.

On October 18, 2005, FATC issued a title insurance policy to Judith in connection with the Imnaha River ranch in the amount of $2.5 million.

Over the next several weeks, AC3 and Marilyn provided copies of the closing documents to Judith on a piecemeal basis, beginning with the deed. Following inspection of the deed, Judith learned that the deed did not conform to the title report and other records indicating that Donald Hubbard lacked capacity to sign on behalf of the Hubbard Charitable Trust. Judith went to AC3's offices to confront Marilyn regarding the defect in the deed. Marilyn advised Judith that the whereabouts of Lindsey, the trustee for the trust, were unknown, and that she had been advised by AC3's attorney that AC3 was not obliged to make any further disclosures regarding Donald Hubbard's authority to sign the deed on behalf of the Hubbard Charitable Trust. Marilyn did not disclose to Judith that the attorney who provided that legal advice was Ricker or that AC3's attorney also represented the Hubbards and the Hubbard Charitable Trust in connection with the transaction. In addition, Marilyn continued to refrain from disclosing to Judith the existence of dumps on the property, and did not disclose that she had recently been involved in litigation against Lindsey and knew his whereabouts.

On January 20, 2006, Judith filed a lawsuit in the District of Oregon against Donald Hubbard, Dorothy Hubbard, the then-trustees of the Hubbard Charitable trust, Marilyn, AC3, John Gorsline, and others. Judith amended her complaint for a third time in the course of those proceedings effective September 11, 2006. By and through her third amended complaint, Judith alleged (*inter alia*) the liability of the sellers of the Imnaha River ranch for knowingly

misrepresenting that there were no dumps on the property notwithstanding the presence of several dumps on the property, the liability of Marilyn and AC3 in connection with knowingly proffering a defective deed in connection with the closing of the Hubbard/Trackwell transaction and in connection with failing to disclose Ricker's and Gorsline's conflicts of interest and the fact that the Hubbard Charitable trust documents were not "in order," and the defendants' liability for conspiring to interfere with the Trackwells' operation of the Imnaha River ranch. On February 16, 2007, Judge Sullivan granted a defense motion to compel arbitration of Judith's claims, and the claims were accordingly sent to arbitration. On May 5, 2008, the arbitrator awarded Judith $50,000 on her claims.

On October 17, 2008, Judith paid off the $500,000 promissory note tendered for the purchase of the Imnaha River ranch. Thereafter the Suarezes, Ricker, Rahn, Charles, Riggs, Bushlen, and the Hamptons engaged in a conspiracy to interfere with Judith's operation of the Imnaha River ranch and, subsequently, with Judith's efforts to sell the Imnaha River ranch. Conduct engaged in for the furtherance of the conspiracy included urging members of the Wallowa County business community not to do business with the Trackwells, organizing boycotts of the Trackwells' businesses, surveilling Lloyd Jr. and/or the Trackwells illegally, refusing to issue title insurance to any prospective purchaser of the Imnaha River ranch, and purchasing the Imnaha River ranch at auction on October 23, 2015. In addition, the conspirators enriched themselves through other illegal conduct not directed at the Trackwells or their property.

On March 31, 2009, the defendants in Judith's lawsuit of January 20, 2006, moved for confirmation of the arbitration award against them.

On June 25, 2009, Judith filed a lawsuit in the Wallowa County Circuit Court against AC3 and FATC. By and through her complaint in that action, Judith alleged FATC and AC3's liability for negligent breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud in connection with the Hubbard/Trackwell transaction, the exchange-facilitator contract, the title-insurance contract, and the escrow-closing agreement. Judith specifically alleged the foredescribed defect in the title to the Imnaha River ranch, the undisclosed Riker conflict of interest, both defendants' actual knowledge at all material times that the sellers' representation that the property contained no dumps was false when made, and that FATC and AC3 breached the title-insurance contract by failing to make payment in response to Judith's demand. In support of her claims, Judith alleged, *inter alia*, that on December 31, 2008, she filed a claim with FATC under the title-insurance contract, and that FATC neither acknowledged nor paid the claim.

On July 15, 2009, the Trackwells filed for Chapter 11 bankruptcy in Missouri. On August 3, 2009, the Trackwells filed a schedule of assets belonging to the Trackwells' bankruptcy estate. That schedule of assets included a "Cause of action related to actions involved in Judith Trackwell's purchase of [the Imnaha River] Ranch in Oregon" as against AC3 and the same cause of action as against FATC. The schedule of assets does not list any cause of action against any other defendant herein, and was never amended to include any other cause of action against any defendant herein.

On February 2, 2010, Judith having failed to comply with a court order regarding status reports, Judge Sullivan dismissed her claims in the lawsuit of January 20, 2006, denying the motion to confirm the arbitrator's award as moot.

On September 13, 2010, the Bankruptcy Court for the Western District of Missouri approved the Trackwell's Chapter 11 bankruptcy plan. The Trackwells' confirmed Chapter 11 bankruptcy plan provides, *inter alia*, that:

> Notwithstanding the entry of an Order of Confirmation, **the Debtors** shall continue as Debtors-in-Possession until the entry of a final decree closing this Chapter 11 case; **shall have all the rights and powers of a trustee serving in a case under this Chapter of the Bankruptcy Code; shall retain and remain in possession after confirmation of this Plan of all causes of action as they may have** under the Bankruptcy Code; and as **Debtors-in-Possession shall be authorized to prosecute such actions as fully and completely as if the same were being prosecuted by a Trustee in Bankruptcy**.

*In re Trackwell*, Case No. 09-61596 (D. W. Mo. March 16, 2010) (emphasis supplied).

On or around October 14, 2014, Judith and Lloyd Sr. assigned "all right title and interest" in any claim possessed by the Trackwells' bankruptcy estate to Wickenkamp "in order that she may prosecute and recover all such claims for the benefit of the [Trackwells'] bankruptcy estate and remit the proceeds of such claims to said estate." The Assignment of Claims recites no consideration tendered by Wickenkamp to the Trackwells in exchange for such assignment.

This action followed. Wickenkamp filed her original complaint in this action against FATIC, AC3, and Marilyn on October 16, 2014. It appears that summons was executed on AC3 effective March 11, 2015. *See* Docket No. 15. Although summons issued against Marilyn on February 24, 2015, the same day that summons issued against AC3, there is no evidence of record that summons was ever properly executed against Marilyn. There is, in addition, no evidence that summons was ever properly executed against moving defendant FATC, but FATC asserts that service was made on it February 12, 2015 (presumably under the name of FATIC). There is no evidence of record that FATC was served with process on any date prior to February

Page 15 - FINDINGS AND RECOMMENDATION

## WICKENKAMP'S CLAIMS AND THEIR FACTUAL BASES

Arising out of the foregoing alleged facts, Wickenkamp brings thirteen claims against the defendants. Wickenkamp's first claim is brought against FATC and AC3 for breach of the fiduciary duty purportedly arising out of the relationship created by the exchange-facilitator contract. For purposes of this claim Wickenkamp takes the position that Marilyn (AC3's principal) acted as AC3's agent and that AC3 acted as FATC's agent, such that FATC can properly be found liable for the conduct of either AC3 or Marilyn. The alleged breach of fiduciary duty is comprised of those defendants' failures to disclose (i) the Ricker conflict of interest, (ii) that Marilyn had a history of using AC3 to commit fraud and other unlawful practices, (iii) Gorsline's conflict of interest, (iv) that the Hubbard Charitable Trust was a sham, (v) the defect in the Imnaha River ranch deed caused by Donald Hubbard signing in lieu of Colin Lindsey, and (vi) the material falseness of the representation that the property contained no dumps, as well as those defendants' conduct in (vii) refusing to permit Judith to inspect the documentation related to the sale of the Imnaha River ranch, (viii) permitting the transaction to go forward notwithstanding their knowledge of the defect in the title, (ix) issuing a fraudulent I.R.S. form 1099, (x) refusing to permit Judith to take copies of the closing documents with her following closing, (xi) failing to pay damages on the title-insurance policy, and (xii) failing to insure that Judith received clear title to the ranch.

Wickenkamp's second claim is brought against FATC and AC3 for breach – styled and

---

[3] There is no indication in the docket or elsewhere in the record that any defendant or intended defendant other than AC3, FATIC or FATC, and possibly Marilyn Suarez has properly been served with process herein.

alleged as "negligent breach" – of the exchange-facilitator contract. The conduct allegedly

constituting breach is entirely unclear from Wickenkamp's pleading, in that while she alleges that

the claim is premised on the conduct described in paragraphs 10-13 of her complaint, those

paragraphs do not set forth conduct comprising breach of contract, and she does not allege that

the Section 1031 transaction failed or triggered any unexpected adverse tax consequences.

Indeed, Wickenkamp expressly alleges that FATC "[c]oncluded the Section 1031 exchange." It

is possible that Wickenkamp intends to state her "negligent breach" claim as arising out of the

same conduct underlying her breach of fiduciary duty claim, discussed above.

Wickenkamp's third claim is brought against FATC and AC3 for breach of the covenant

of good faith and fair dealing implied in the title-insurance contract. The conduct comprising

alleged breach of the covenant implied in the title-insurance contract is those defendants':

(i) issuance of a title commitment report that failed to disclose the sham nature of the Hubbard

Charitable Trust and failed to disclose the existence of dumps on the property, (ii) deliberate

concealment of the trust deed and its defect from Judith, (iii) conduct in requiring Judith to sign

closing papers without inspection and without providing copies, and (iv) conduct in lying about

Lindsey.

Wickenkamp's fourth claim is brought against FATC and AC3 for breach of the title-

insurance contract. The conduct comprising alleged breach of the title-insurance contract is

alleged to be precisely the same as the conduct comprising breach of the covenant of good faith

and fair dealing implied therein. Although not suggested in Wickenkamp's allegations, it is

possible that Wickenkamp instead intended her claim for breach of the title-insurance contract to

arise out of FATC's failure to pay Judith's legal costs incurred in "defending" title to the Imnaha

River ranch by and through the litigation and arbitral proceedings Judith initiated on January 20, 2006.

Wickenkamp's fifth claim is brought against AC3 for breach of the escrow-closing agreement, specifically of AC3's "duty of neutrality" arising out of the arrangement created by that agreement. The conduct comprising alleged breach of the escrow-closing agreement is AC3's conduct in: (i) issuing the Hubbards a deliberately fraudulent I.R.S. Form 1099 for the purpose of assisting them in tax fraud, (ii) issuing a title commitment report that failed to disclose the sham nature of the Hubbard Charitable Trust and failed to disclose the existence of dumps on the property, (iii) deliberately concealing the trust deed and its defect from Judith, (iv) requiring Judith to sign closing papers without inspection and without providing copies, and (v) lying about Lindsey.

Wickenkamp's sixth claim is brought against AC3 for violation of UTPA. The conduct allegedly comprising AC3's unfair trade practices is not clear from Wickenkamp's allegations. It appears that Wickenkamp may intend this claim to arise out of AC3's conduct in (i) urging members of the business community not to do business with the Trackwells, (ii) urging local real estate agents not to list the Imnaha River ranch for sale on Judith's behalf, (iii) refusing to sell title insurance to prospective purchasers of the Imnaha River ranch, (iv) advising prospective purchasers of the existence of dumps on the ranch, (v) assisting various parties in committing fraud, (vi) committing other, unrelated crimes, (vii) breaching a fiduciary duty owed to Judith, (viii) making misrepresentations to Judith regarding the Imnaha River ranch, (ix) failing to make disclosures it had a duty to disclose regarding the ranch, and (x) conspiring to acquire the Imnaha River ranch from Judith.

Page 18 - FINDINGS AND RECOMMENDATION

Wickenkamp's seventh claim is brought against FATC for violation of UTPA. The conduct allegedly comprising FATC unfair trade practices is not clear from Wickenkamp's allegations. In support of this claim, Wickenkamp expressly alleges that "from approximately May 1, 2005 through October 30, 2009," AC3 was FATC's agent, and that "from approximately April 1, 2013, through October 30, 2013," or four years after the alleged agency ended, AC3 "by and through the actions of Marilyn . . . and . . . Riggs . . . as agents of [FATC] did engaged [*sic*] in a continual course of conduct that constituted unfair and deceptive conduct in trade or commerce." As far as may be ascertained from Wickenkamp's allegations, Wickenkamp intends this claim to arise out of the same conduct underlying her sixth claim for relief. On that construction, both claims are premised on AC3's purported unfair business practices, with the sixth claim alleging AC3's direct liability for engaging in those practices and the seventh claim alleging FATC's vicarious liability for AC3's engagement in those practices.

Wickenkamp's eighth claim, so styled, is not in fact a claim for relief, but rather asserts that AC3 can properly be treated as Marilyn's *alter ego.*

Wickenkamp's ninth claim is brought against AC3, Marilyn, and ORTIC for breach of Oregon's statutory antitrust law. This claim is premised on the fact that AC3 was at all material times the only provider of title insurance in Wallowa County. Wickenkamp does not allege in support of this claim that any of the subject defendants took any improper action to create or to maintain the monopoly.

Wickenkamp's tenth claim is brought against Marilyn, Ricker, Rahn, Zachary, Bushlen, and the Hamptons for conspiracy to interfere with economic relations in connection with both Judith's purchase of the Imnaha River ranch and her subsequent efforts to operate the ranch. To

Page 19 - FINDINGS AND RECOMMENDATION

the extent the claim is premised on interference with the purchase of the ranch, it appears to be premised on the same conduct discussed above in connection with Wickenkamp's first seven claims for relief.

Wickenkamp's eleventh claim is brought against the Suarezes, the Hostetters, the Hamptons, Riggs, and the Wikstroms for conspiracy to interfere with economic relations in connection with Judith's efforts to sell the Imnaha River ranch, culminating in the 2013 auction and sale thereof.

Wickenkamp's twelfth claim for relief is brought against Rahn, the Suarezes, Bruce, and Ricker for racketeering. This claim is premised on those defendants' alleged unrelated criminal conduct, including chiefly tax fraud, as well as the conduct underlying the intentional interference conspiracy claims and conduct intended as retaliation against Lloyd Jr. for reporting some of their criminal conduct to federal and state authorities.

Wickenkamp's thirteenth claim is brought against the Wikstroms, Zachary, Caitlin, Vanese, Scott, Bushlen, Efrain, and Riggs for racketeering. The thirteenth claim is not alleged against any of the current moving defendants. As such, the thirteenth claim is outside the scope of the motions to dismiss now before the court. Like the twelfth claim, the thirteenth claim appears to be premised on the subject defendants' alleged unrelated criminal conduct, including chiefly tax fraud, as well as conduct intended as retaliation against Lloyd Jr. for reporting some of their criminal conduct to federal and state authorities.

## ANALYSIS

By and through its motion, in which AC3 and Marilyn join, FATC seeks dismissal of Wickenkamp's claims against it (Wickenkamp's first through fourth and seventh claims for relief)

Page 20 - FINDINGS AND RECOMMENDATION

as time-barred. In addition, FATC seeks award of its costs incurred in connection with litigating Wickenkamp's seventh claim for relief.

By and through their motion, in which FATC joins, AC3 and Marilyn (the "AC3 defendants") seek dismissal of Wickenkamp's action with prejudice in its entirety for failure to comply with Federal Civil Procedure Rule 8(a), in the alternative challenge Wickenkamp's standing to litigate these claims on assignment, and in the further alternative seek dismissal of Wickenkamp's sixth through thirteenth claims on judicial estoppel grounds and dismissal of Wickenkamp's sixth, seventh, and ninth claims on their merits.

I discuss the parties' arguments and the legal issues they raise below. Because standing raises jurisdictional concerns, I begin my analysis with the question of Wickenkamp's standing.

## I.     Wickenkamp's Capacity to Proceed *Pro Se* Pursuant to the Assignment of Claims Dated October 14, 2014

The moving defendants note that Wickenkamp was a member of the Nebraska bar from 1980 until 2009, when she was disbarred by the Nebraska Supreme Court for abuse of the litigation process (including in connection with cases in which she represented members of the Trackwell family). *See State ex rel. Counsel for Discipline v. Wickenkamp*, 277 Neb. 16, 17, 25 (2009); *see also id.* at 24 ("Wickenkamp: (1) improperly escalated a simple contract case into a case involving illegal and possibly criminal behavior, (2) contacted opposing parties who were represented by counsel, (3) distributed a portion of her client's funds to herself as fees when she knew her client disagreed with the proposed fee, and (4) forged her client's signature to a purported *pro se* filing"). The moving defendants further note that while Wickenkamp was a licensed attorney, she represented the Trackwells as plaintiffs in more than 20 lawsuits. In addition, the moving defendants note that Wickenkamp has been sanctioned on multiple

Page 21 - FINDINGS AND RECOMMENDATION

occasions for vexatious litigation practices, including at least one occasions since her disbarment in connection with litigation where Wickenkamp proceeded *pro se* with claims on assignment from a member of the Trackwell family. *See Wickenkamp v. Smith*, Case No. 8:13-CV-262-RGK-CRZ (D. Neb. April 28, 2014); *see also id.,* May 12, 2014. On the basis of the foregoing, the moving defendants take the position that the assignment of claims at issue in this action constitutes an attempt by Wickenkamp to circumvent her disbarment and to continue the practice of law and to continue representing the Trackwells in litigation without a license.

I agree with the moving defendants that Wickenkamp's history raises grave concerns regarding the possibility that Wickenkamp may be engaged in the practice of law without a license. However, I note that Wickenkamp is married to Lloyd Jr.and is daughter-in-law to Lloyd Sr. and Judith, and thus has a degree of interest in the matters litigated herein. In light of Wickenkamp's familial ties to the Trackwell family and her interest in the subject matter of this litigation, I am reluctant to recommend on the basis of the current record that the court find as a matter of law that by litigating claims assigned to her by members of the Trackwell family Wickenkamp must necessarily be engaged in the unlicensed practice of law. However, the court need not address the difficult question whether Wickenkamp's history compels the conclusion that she is currently engaged in the unlicensed practice of law in order to find that Wickenkamp lacks standing to bring the claims asserted herein pursuant to the assignment of claims dated October 14, 2014.

As noted above, on or around October 14, 2014, Judith and Lloyd Sr. purported to assign "all right title and interest in any and all claims possessed by the [Trackwells'] bankruptcy estate" to Wickenkamp "*in order that she may prosecute and recover all such claims for the benefit of*

Page 22 - FINDINGS AND RECOMMENDATION

*the [Trackwells'] bankruptcy estate and remit the proceeds of such claims to said estate."*
(Emphasis supplied.) Thus, notwithstanding the language purporting to assign "all right title and interest" in the claims at issue to Wickenkamp, in fact by its plain language the Assignment of Claims could have been effective, at most, to assign all interest in the claims *other than the beneficial interest* therein, which was expressly retained in the bankruptcy estate. It is axiomatic that a litigant acts "in a representative capacity by requesting relief on behalf of a legal entity other than h[er]self." *Simon v. Hartford Life and Accident Ins. Co.*, 546 F.3d 661, 665 (9th Cir. 2008). It is moreover well settled that a non-attorney may not pursue claims *pro se* while acting in such a representative capacity. *See id.* at 664 ("[C]ourts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity") and cases cited therein; *see also C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697-698 (9th Cir. 1987) (because he was not the "actual beneficial owner" of the claims asserted and therefore could not "be viewed as a 'party' conducting his *'own* case personally,'" district court properly dismissed without prejudice claims asserted by a trustee attempting to represent a trust *pro se*; holding also that federal law rather than Oregon law governs the question whether a party may proceed *pro se* in federal court) (emphasis original).

Because it expressly conferred only a nominal interest in claims possessed by the Trackwells' bankruptcy estate and did not purport to assign any beneficial interest in those claims to Wickenkamp, the Assignment of Claims could not have conferred standing on Wickenkamp to pursue any such claims *pro se*. Wickenkamp does not take the position that she has standing to pursue any of the claims asserted herein other than by and through the Assignment of Claims of October 14, 2014. Because Wickenkamp's sole theory of standing necessarily fails as a matter of

Page 23 - FINDINGS AND RECOMMENDATION

law, it follows that all of the claims asserted herein are subject to dismissal without prejudice for lack of standing. Moreover, the defect in Wickenkamp's standing to pursue her claims is not subject to cure by amendment; even if Wickenkamp were to obtain a new assignment of claims from Judith, such assignment would not be effective to confer standing on Wickenkamp as of the date this action was filed. *See, e.g., Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 955 (9th Cir. 2011).

At oral argument, Wickenkamp asserted that because the Trackwells' bankruptcy proceedings are now closed, any proceeds from Wickenkamp's claims would flow directly to the Trackwells rather than to the bankruptcy estate. Without addressing the accuracy of that assertion, I note that even if its accuracy were established, that fact would not constitute grounds for modifying the foregoing analysis. Whether she proceeds for the benefit of the Trackwells or for their estate, under the Assignment of Claims Wickenkamp proceeds not for her own benefit but for the benefit of another, and therefore seeks impermissibly to proceed *pro se* in a representative capacity.

I note, further, that the same result would obtain if Wickenkamp were construed as seeking to proceed as the representative of the Trackwells' bankruptcy estate, because for the reasons discussed above, a party may not proceed in a representative capacity *pro se*. *See Simon*, 546 F.3d at 664-665; *see also Iannaccone v. Law*, 142 F.3d 553, 559 (2nd Cir. 1998) (administrator of estate may not appear *pro se* on behalf of estate; cited with approval by the *Simon* court); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2nd Cir. 1997) (executrix may not appear *pro se* on behalf of estate; cited with approval by the *Simon* court).

Finally, I note that Wickenkamp has asserted a First Amendment right to prosecute claims

Page 24 - FINDINGS AND RECOMMENDATION

*pro se* on assignment notwithstanding the foregoing analysis. Wickenkamp has not, however, presented the court with a fully developed constitutional argument in defense of her standing to pursue her claims herein, and nothing in the record suggests that this court's adherence to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity would infringe any constitutional right Wickenkamp possesses.

For all of the foregoing reasons, all of Wickenkamp's claims asserted herein should be dismissed without prejudice for lack of standing.

## II.  Judicial Estoppel

Because, for reasons discussed above, Wickenkamp lacks standing to prosecute any of her claims asserted herein, the court need not consider any additional issues raised by Wickenkamp's claims or by the parties' arguments for or against dismissal thereof. However, to assist the court in reaching a fully informed disposition of the motions now at issue, I nevertheless analyze those issues and arguments, below.

Even if the Assignment of Claims of October 14, 2014, were construed (in contravention of its plain language) as assigning to Wickenkamp a beneficial interest in the subject claims, Wickenkamp would be judicially estopped from pursuing certain of her claims in whole or in part. As noted above, by and through the Assignment of Claims Judith and Lloyd Sr. purported to assign "all right title and interest in any and all claims *possessed by the [Trackwells']* *bankruptcy estate*" to Wickenkamp. (Emphasis supplied.) The question therefore necessarily arises: to what extent were the claims asserted herein both possessed by the Trackwells' bankruptcy estate and assignable by the debtors as of October 14, 2014?

The filing of a bankruptcy petition "creates an estate . . . comprised of . . . all legal or

Page 25 - FINDINGS AND RECOMMENDATION

equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §
541(a)(1). Property of the bankruptcy estate includes all of the debtor's interests in any cause of
action that has accrued before the filing of the bankruptcy petition. *Sierra Switchboard Co. v.
Westinghouse Electric Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). Legislative history indicates
that the scope of Section 541(a)(1) "is broad." 11 U.S.C. § 541(a)(1), Senate Report No. 95-989.

Upon the filing of a bankruptcy petition, the debtor is required to file a schedule of its
assets and liabilities, including any causes of action. *See* 11 U.S.C. § 521(a)(1); *see also Sierra*,
789 F.2d at 707. An accrued cause of action becomes an asset of the bankruptcy estate, even if it
is not scheduled as such. *See* 11 U.S.C. § 541(a); *see also Cusano v. Klein*, 264 F.3d 936, 945
(9th Cir. 2001). Assets scheduled under section 521 of the Bankruptcy Code that are not
administered by the bankruptcy trustee at the time the bankruptcy case is closed are abandoned to
the debtor by operation of law. *See* 11 U.S.C. § 554(c). However, unscheduled assets not
administered or abandoned by the bankruptcy trustee *remain in the bankruptcy estate after the
case is closed*, and do not revert to the debtor. *See* 11 U.S.C. § 554(d); *see also Alary Corp. v.
Sims*, 283 B.R. 549, 566 n. 14 (B.A.P. 9th Cir. 2002) ("Unscheduled property remains 'property
of the estate' after the case is closed (*i.e.* forever). . . ; [t]he standard solution for dealing with
property of the estate after closing is to reopen the case and order appointment of a trustee to deal
with the property"); *Cusano*, 264 F.3d at 945-946.

The trustee may abandon property that is "burdensome" to the estate or of little value after
notice and a hearing. *See* 11 U.S.C. § 554(a). Alternatively, the bankruptcy court, on motion,
may order the abandonment of certain property. *See* 11 U.S.C. § 554(b). Otherwise assets
remain in the bankruptcy estate or revert to the debtor only as provided in the confirmed

Page 26 - FINDINGS AND RECOMMENDATION

bankruptcy plan or as discussed above.

Because of the breadth of Section 541(a)(1), the courts of the Ninth Circuit have held that a debtor's contingent interest in an asset at the time an estate is created that subsequently vests into a complete interest only subsequently become the property of the estate at the time it vests. *See In re Neuton*, 922 F.2d 1379, 1382-1383 (9th Cir. 1990); *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984). In consequence, causes of action premised on pre-petition conduct but accruing only post-petition are necessarily also assets of the bankruptcy estate. *See Ellwanger v. Budsberg*, 140 B.R. 891, 897-898 (Bankr. W.D. Wash. 1992).

In light of the foregoing, each of the claims asserted herein falls into one of three possible categories: (i) scheduled assets of the bankruptcy estate, (ii) unscheduled assets of the bankruptcy estate, or (iii) claims premised on conduct taking place post-petition that were therefore assets of Judith and/or Lloyd Sr., and were not at any time assets of the bankruptcy estate. As noted above, on July 15, 2009, Judith and Lloyd Sr. filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Western District of Missouri, and on August 3, 2009, the Trackwells filed a schedule of assets belonging to the bankruptcy estate. That schedule of assets included a "Cause of action related to actions involved in Judith Trackwell's purchase of [the Imnaha River] Ranch in Oregon" as against AC3 and the same cause of action as against FATC. No other cause of action asserted herein was ever scheduled. Construing the foregoing language as broadly as possible in Wickenkamp's favor, claims asserted herein that could constitute scheduled assets of the Trackwells bankruptcy estate are limited to the following: Wickenkamp's first through fifth causes of action in their entirety, and her sixth, seventh, tenth, twelfth, and thirteenth causes of action to the limited extent that those claims may be premised on conduct

Page 27 - FINDINGS AND RECOMMENDATION

relating to the purchase of the Imnaha River ranch. All other claims asserted herein necessarily constitute either unscheduled assets of the bankruptcy estate or claims that accrued directly to Judith and/or Lloyd Sr. without ever being possessed by the bankruptcy estate, depending on when the underlying conduct occurred.

As to claims falling into the first category – claims constituting scheduled assets of the bankruptcy estate – the moving defendants argue that these claims were not assignable by Judith as of October 14, 2014, because the bankruptcy court never expressly approved the assignment. I disagree with that argument. As noted above, on September 13, 2010, the Bankruptcy Court for the Western District of Missouri approved the Trackwell's Chapter 11 bankruptcy plan. The Trackwells' confirmed Chapter 11 bankruptcy plan provides, *inter alia*, that:

> Notwithstanding the entry of an Order of Confirmation, **the Debtors** shall continue as Debtors-in-Possession until the entry of a final decree closing this Chapter 11 case; **shall have all the rights and powers of a trustee serving in a case under this Chapter of the Bankruptcy Code; shall retain and remain in possession after confirmation of this Plan of all causes of action as they may have** under the Bankruptcy Code; and as **Debtors-in-Possession shall be authorized to prosecute such actions as fully and completely as if the same were being prosecuted by a Trustee in Bankruptcy**.

*In re Trackwell*, Case No. 09-61596 (D. W. Mo. March 16, 2010) (emphasis supplied).

The court's confirmation of the plan was effective to grant Judith plenary power to prosecute causes of action properly scheduled as assets of the bankruptcy estate. Such power presumably also included the power of a trustee in bankruptcy to assign claims possessed by the estate. If Judith had the power to assign claims constituting scheduled assets of the bankruptcy estate that reverted to her following confirmation of the bankruptcy plan, on the (inaccurate) *arguendo* assumption that the Assignment of Claims conferred a beneficial interest in the subject

Page 28 - FINDINGS AND RECOMMENDATION

claims, Wickenkamp could properly assert standing to prosecute claims that had formally been scheduled as assets of the bankruptcy estate.

As to claims falling into the second category – claims constituting unscheduled assets of the bankruptcy estate – as noted above such claims did not revert to the Trackwells following confirmation of the bankruptcy plan but rather remained within the bankruptcy estate. *See* 11 U.S.C. § 554(d); *Alary*, 283 B.R. at 566 n. 14; *Cusano*, 264 F.3d at 945-946. The Ninth Circuit analyzes "omitted claims that a revested debtor seeks to prosecute after obtaining confirmation of a chapter 11 plan" under a judicial estoppel framework. *Alary*, 283 B.R. at 565. The *Alary* court discussed the analysis as follows:

> Judicial estoppel is an equitable doctrine that encompasses a number of different abuses.
>
> One form of judicial estoppel is preclusion of inconsistent positions, which estops a party from gaining advantage by taking one position and later seeking another advantage from an inconsistent position. *New Hampshire v. Maine*, 532 U.S. 742, 749-51, 149 L. Ed. 2d 968, 121 S. Ct. 1808 (2001); *Hamilton* [*v. State Farm Fire & Cas. Co.*], 270 F.3d 778[,] 782-85 [(9th Cir. 2001)]; *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990); 18B Wright & Miller § 4477.
>
> The doctrine extends to incompatible statements and positions in different cases. *Rissetto*, 94 F.3d 597 .
>
> Independent of unfair advantage from inconsistent positions, judicial estoppel may be imposed: out of "general consideration of the orderly administration of justice and regard for the dignity of judicial proceedings;" or to "protect against a litigant playing fast and loose with the courts." *Hamilton*, 270 F.3d 778 at 782; *Russell*, 893 F.2d at 1037. Moreover, it may be invoked "to protect the integrity of the bankruptcy process." *Hamilton*, 270 F.3d 778 at 785.
>
> The Supreme Court, emphasizing that it was "not establishing inflexible prerequisites," noted that the decision to apply judicial estoppel is typically informed by whether there was a "clearly inconsistent" position, whether the first position was accepted by a court so that acceptance of a second position would create the perception that one of the courts was misled, and whether an unfair

advantage or unfair detriment would result without an estoppel. *New Hampshire v. Maine*, 532 U.S. at 750-51 ("Additional considerations may inform the doctrine's application in specific factual contexts.").

The Ninth Circuit requires that the inconsistent position have been "accepted" by the first court. *Hamilton*, 270 F.3d 778 at 783. In a functional sense, this satisfies the usual estoppel requirement of reliance. The focus of reliance is shifted from the opposing party to the court, which is, in effect, the victim.

**In the bankruptcy context, the granting of a discharge is sufficient "acceptance" of the accuracy of schedules to provide a basis for judicial estoppel,** even if the discharge is later revoked. 270 F.3d 778 at 784. A bankruptcy court may also "accept" a debtor's defective assertion based on nondisclosure in such other ways as vacating the automatic stay or confirming a plan. *Id.*; *Hay [v. First Interstate Bank, N.A.]*, 978 F.2d[,] 557 [(9th Cir. 1992)].

**The estoppel commonly takes the form of preventing the debtor from prosecuting, or otherwise enjoying the unscheduled property.** *See, e.g., Hamilton*, 270 F.3d 778 at 785.

*Id.* at 565-566 (emphasis supplied; footnote omitted). Because Judith was judicially estopped as of October 14, 2014, from prosecuting claims constituting unscheduled assets of the bankruptcy estate, it follows that Wickenkamp is similarly estopped from prosecuting those same claims on assignment from Judith. *See Misic v. Building Service Employees Health & Welfare Trust*, 789 F.2d 1374, 1378 n. 4 (9th Cir. 1986) (an "assignee stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed").

As to claims falling into the third category – claims that accrued directly to Judith and/or Lloyd Sr. and were not possessed by the bankruptcy estate at any time – it is clear that such claims are outside the scope of the Assignment of Claims of October 14, 2014, which expressly purports to assign only claims possessed by the bankruptcy estate. Because there can be no argument that claims falling into the third category were effectively assigned to Wickenkamp, Wickenkamp necessarily lacks standing to prosecute such claims.

Page 30 - FINDINGS AND RECOMMENDATION

For the foregoing reasons, even on the *arguendo* assumption that the Assignment of

Claims could have conferred a beneficial interest in the claims within its scope, Wickenkamp's

ninth and eleventh causes of action should be dismissed in their entirety without prejudice, and

her sixth, seventh, tenth, twelfth, and thirteenth causes of action should be dismissed without

prejudice except to the limited extent that those claims may be premised on conduct relating to

the purchase of the Imnaha River ranch.[4]

### III.    Timeliness of the Claims Relating to Judith's Purchase of the Imnaha River Ranch

Also in the alternative to their arguments regarding standing, the moving defendants

argue that all of Wickenkamp's claims relating to Judith's purchase of the Imnaha River ranch are

incurably time-barred. To the extent her claims appear time-barred as they are currently alleged,

Wickenkamp requests the right to amend her pleading to allege facts purportedly tending to

establish that they were timely brought, either because the operative facts were not discovered by

Judith until significantly later than they occurred, because grounds exist for equitable tolling of

the applicable limitations periods, and/or because the applicable limitations periods were

extended during the pendency of the Trackwells' bankruptcy proceedings. On the *arguendo*

assumption that Wickenkamp has standing to pursue her purchase-related claims, I agree with the

moving defendants that each such claim is incurably time-barred.

As noted above, on January 20, 2006, Judith filed a lawsuit in the District of Oregon

against Donald Hubbard, Dorothy Hubbard, the then-trustees of the Hubbard Charitable trust, the

AC3 defendants, and others. Judith amended her complaint for a third time in the course of those

proceedings effective September 11, 2006. By and through her third amended complaint, Judith

_____

[4] As noted above, Wickenkamp's eighth enumerated claim is not a cause of action.

alleged (*inter alia*) the liability of the sellers of the Imnaha River ranch for knowingly

misrepresenting that there were no dumps on the property notwithstanding the presence of

several dumps on the property, the liability of Marilyn and AC3 in connection with knowingly

proffering a defective deed in connection with the closing of the Hubbard/Trackwell transaction

and in connection with failing to disclose Ricker's and Gorsline's conflicts of interest and the fact

that the Hubbard Charitable trust documents were not "in order," and the defendants' liability for

conspiring to interfere with the Trackwells' operation of the Imnaha River ranch. Judith therefore

demonstrably had actual, non-constructive knowledge of all of the potentially actionable conduct

allegedly underlying her purchase-related claims by not later than September 11, 2006.[5]

Wickenkamp's claims for breach of fiduciary duty and for conspiracy to intentionally

interfere with economic relations are subject to the two-year limitations period codified at Or.

Rev. Stat. 12.110(1). *See* Or. Rev. Stat. 12.110(1); *see also Spirit Partners, LP v. Stoel Rives

LLP*, 212 Or. App. 295, 307 (2007) (breach of fiduciary duty); *Caplener v. United States Nat'l

Bank*, 317 Or. 506, 508 (1993) (intentional interference with economic relations). Those claims

are subject to a common-law discovery rule pursuant to which they are deemed to have accrued

when the plaintiff "knows or in the exercise of reasonable care should have known facts which

---

[5] Moreover, on June 25, 2009, Judith filed a lawsuit in the Wallowa County Circuit
Court against AC3 and FATC. By and through her complaint in that action, Judith alleged
FATC and AC3's liability for negligent breach of contract, breach of the implied covenant of
good faith and fair dealing, and fraud in connection with the Hubbard/Trackwell transaction, the
exchange-facilitator contract, the title-insurance contract, and the escrow-closing agreement.
Judith specifically alleged the defect in the title to the Imnaha River ranch, the undisclosed Riker
conflict of interest, FATC's and AC3's actual knowledge at all material times that the sellers'
representation that the property contained no dumps was false when made, and FATC's and
AC3's breach of the title-insurance contract by failing to make payment in response to Judith's
demand of December 2008.

Page 32 - FINDINGS AND RECOMMENDATION

would make a reasonable person aware of a substantial possibility that each of the three elements of a claim (harm, causation, and tortious conduct) exists." *Kelly v. Lessner*, 224 Or. App. 31, 36 (2008) (internal modifications omitted), *quoting Gaston v. Parsons*, 318 Or. 247, 256 (1994). Thus, absent tolling or extension, Wickenkamp's purchase-related claims for breach of fiduciary duty and for conspiracy to intentionally interfere with economic relations (her first and tenth claims) are time-barred to the extent Judith was actually or constructively aware of the facts giving rise to them prior to October 16, 2012.[6] Because Judith had actual knowledge of the facts giving rise to these claims by not later than September 11, 2006, absent tolling or extension the claims are necessarily incurably time-barred.

Wickenkamp's various breach of contract claims are subject to the six-year limitations period codified at Or. Rev. Stat. 12.080. *See* Or. Rev. Stat. 12.080. No discovery rule is applicable to claims for breach of contract, which generally accrue when the breach occurs. *See Waxman v. Waxman & Assocs.*, 224 Or. App. 499, 511-512 (2008). Thus, absent tolling or extension, Wickenkamp's claims for breach of contract (her second through fifth claims) are time-barred to the extent each relevant breach occurred prior to October 16, 2008.[7]

---

[6]  It appears likely that, because she did not serve any defendant with process within 120 days of filing her complaint in this action, Wickenkamp cannot rely on the date she initiated these proceedings to determine the timeliness of her claims, but rather must rely on the date of service of each defendant to determine whether her claims were timely brought as to each. *See Torre v. Brickey*, 278 F.3d 917, 919-920 (9th Cir. 2002). In consequence, to be timely brought against the AC3 defendants (assuming that service on AC3 was sufficient to accomplish service on Marilyn), these claims would need to have accrued not earlier than March 11, 2013, the date two years before the date AC3 was served, and to be timely brought against FATC, these claims would need to have accrued not earlier than February 12, 2013, the date two years before the date FATC was reportedly served.

[7]  As noted above, it appears likely that Wickenkamp must rely on date of service to determine the timeliness of her claims, rather than on the date this action was filed. *See Torre*,

Although it is difficult to determine precisely what conduct underlies Wickenkamp's second claim for relief, styled as a claim for "negligent" breach of the exchange-facilitator contract, it is clear that that contract was breached, if at all, in 2005. It is similarly clear that all of the conduct alleged to constitute breach of the covenant of good faith and fair dealing implied in the title-insurance contract (Wickenkamp's third claim for relief) and of the escrow-closing agreement (Wickenkamp's fifth claim for relief) likewise occurred in 2005. Because no discovery rule applies to claims of breach of contract, it is therefore clear that absent tolling or extension Wickenkamp's second, third, and fifth claims are necessarily incurably time-barred.

As to the fourth claim for relief, premised on FATC's and AC3's alleged breach of the title-insurance contract, all of the conduct Wickenkamp alleged by and through her second amended complaint to constitute breach of that contract occurred in 2005, such that the fourth claim is time-barred as alleged. Wickenkamp asserts that she can amend her fourth claim to cure its untimeliness, specifically by premising the claim on FATC's failure to reimburse her for her attorney fees incurred in the litigation and arbitral proceedings initiated by Judith on January 20, 2006, which she characterizes as in part motivated by the impulse to defend Judith's title to the Imnaha River ranch. Wickenkamp takes the position that breach of the title-insurance contract did not occur until on or after December 31, 2008, when Judith first made a demand on FATC for reimbursement of the attorney fees she had already incurred in those proceedings.

It would be futile to grant Wickenkamp's request for leave to amend her fourth claim. As a matter of law, FATC had no obligation under the title-insurance contract to make any payment

_____

278 F.3d at 919-920. In consequence, to be timely brought against the AC3 defendants, these claims would need to have accrued not earlier than March 11, 2009, and to be timely brought against FATC, these claims would need to have accrued not earlier than February 12, 2009.

to Judith in connection with her demand of December 31, 2008, or otherwise to pay her fees in connection with the proceedings initiated January 20, 2006. As noted above, FATC's obligation to defend under the title-insurance contract was expressly limited to claims brought against Judith, and did not extend to prosecuting claims brought by Judith against third parties. Moreover, FATC's obligation to pay attorney fees was expressly limited to fees charged by attorneys selected by FATC, to the exclusion of all other attorneys. In the absence of tolling or extension, Wickenkamp's fourth claim is therefore also incurably time-barred.

Wickenkamp's UTPA claims are subject to the one-year limitations period and discovery rule set forth at Or. Rev. Stat. 646.638(6). *See* Or. Rev. Stat. 646.638(6). UTPA claims accrue when "the discovery of the unlawful method, act or practice at issue" is discovered. *Id.* Thus, absent tolling or extension, Wickenkamp's UTPA claims (her sixth and seventh claims) are time-barred to the extent Judith was actually or constructively aware of the facts giving rise to them prior to October 16, 2013.[8] Because Judith had actual knowledge of the facts giving rise to these claims by not later than September 11, 2006, absent tolling or extension the claims are necessarily incurably time-barred.

Wickenkamp's racketeering claims are subject to a four-year limitations period. *See Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001). Under the "injury discovery" rule, the limitations period begins to run when all elements of a racketeering claim exist and the plaintiff knows or should know she has been injured. *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir.

---

[8] As noted above, it appears likely that Wickenkamp must rely on date of service to determine the timeliness of her claims, rather than on the date this action was filed. *See Torre*, 278 F.3d at 919-920. In consequence, to be timely brought against the AC3 defendants, these claims would need to have accrued not earlier than March 11, 2014, and to be timely brought against FATC, these claims would need to have accrued not earlier than February 12, 2014.

1996). The plaintiff need not have discovered these acts were part of a pattern of racketeering activity for her claim to accrue. *See id.* at 510. Thus, absent tolling or extension, Wickenkamp's racketeering claims (her twelfth and thirteenth claims) are time-barred to the extent Judith was actually or constructively aware of any injury that resulted from the defendants' alleged conduct prior to October 16, 2010.[9] Because Judith had actual knowledge of injury flowing from conduct allegedly underlying these claims by not later than January 20, 2006, absent tolling or extension the claims are necessarily incurably time-barred.

Wickenkamp offers two arguments in support of the proposition that, notwithstanding the foregoing, her claims should not be dismissed on grounds of untimeliness. First, she argues that the defendants took steps to prevent Judith from learning some of the operative facts underlying her claims, and/or that Lloyd Jr. learned some of the facts supporting the racketeering and/or conspiracy claims in 2013. On that basis, Wickenkamp argues that she is entitled to equitable tolling of the applicable statutes of limitations. This argument is unavailing because, for the reasons set forth above, regardless of what steps the defendants took to conceal their alleged wrongdoing and regardless of what Lloyd Jr. may have learned in 2013, Judith had actual knowledge of the facts underlying her purchase-related claims by September 11, 2006. *See, e.g.*, *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1033-1034 (9th Cir. 2006) (noting that a plaintiff with actual knowledge of the right to bring a judicial action may not rely on equitable tolling).

Second, Wickenkamp argues that all applicable limitations periods were extended during

---

[9] As noted above, it appears likely that Wickenkamp must rely on date of service to determine the timeliness of her claims, rather than on the date this action was filed. *See Torre*, 278 F.3d at 919-920. In consequence, to be timely brought against the AC3 defendants, these claims would need to have accrued not earlier than March 11, 2011, and to be timely brought against FATC, these claims would need to have accrued not earlier than February 12, 2011.

the pendency of the Trackwells' bankruptcy proceedings, such that her claims were timely brought. This argument is premised on a fundamental misunderstanding of applicable bankruptcy law. The filing of a petition for Chapter 11 bankruptcy imposes an automatic stay of legal proceedings against the debtor, but imposes no such stay as to legal proceedings brought by the debtor against third parties. *See* 11 U.S.C. § 362(a); *see also, e.g., In re Chugach Forest Prods.*, 23 F.3d 241, 246 (9th Cir. 1994) ("[a]s a general rule, 'the automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. . . [and] does not protect non-debtor parties or their property'"), *quoting In re Advanced Ribbons & Office Prods.*, 125 Bankr. 259, 263 (Bankr. 9th Cir. 1991). As to pre-petition claims possessed by the debtor, such claims may be subject to an extension of applicable limitations periods for up to two years, but only until a maximum of two years after the bankruptcy petition is filed. *See* 11 U.S.C. § 108(a); § 301(b); *see also, e.g., In re Smith*, 235 F.3d 472, 475 (9th Cir. 2000). Here, the Section 108(a) extension could have been triggered as to claims not yet expired as of July 15, 2009, but only until July 15, 2011, at the latest. This action was not filed until October 16, 2014.

For the foregoing reasons, even on the *arguendo* assumption that the Assignment of Claims could have conferred a beneficial interest in the claims within its scope, Wickenkamp's first through fifth claims should be dismissed in their entirety with prejudice, and her sixth, seventh, tenth, twelfth, and thirteenth claims should be dismissed with prejudice to the extent that those claims may be premised on conduct relating to the purchase of the Imnaha River ranch (and thus survived dismissal on judicial estoppel grounds).

## IV. Other Merits Arguments

In the further alternative to their arguments regarding standing and in the alternative to

Page 37 - FINDINGS AND RECOMMENDATION

their arguments regarding judicial estoppel and timeliness, the moving defendants argue that Wickenkamp's allegations in support of her UTPA claims, antitrust claim, and racketeering claims fail on their merits to state any claim upon which relief can be granted. The court need not reach these arguments, but in the interest of assuring a fully informed disposition of the motions before the court, I nevertheless analyze them briefly.

As to the moving defendants' argument that the antitrust claim cannot survive dismissal on its merits, I agree with the moving defendants that an antitrust action under Oregon law requires defendant conduct constituting "the willful acquisition or maintenance" of monopoly power, *Willamette Dental Group, P.C. v. Oregon Dental Serv. Corp.*, 130 Or. App. 487, 492-493 (1994), and that Wickenkamp has alleged no such conduct. Because the defect in Wickenkamp's allegations of conduct constituting violation of Oregon's antitrust law is subject to cure by amendment, should the court reach this argument Wickenkamp's ninth claim would be subject to dismissal without prejudice on merits grounds.

As to the moving defendants' argument that the UTPA claims cannot survive dismissal on their merits, I disagree with the moving defendants' argument that the UTPA is wholly inapplicable here because the purchase of a ranch does not constitute commerce or trade. It is unclear from Wickenkamp's allegations to what extent the Imnaha River ranch was purchased for business rather than personal reasons, but it is fairly clear that the Trackwells attempted to run the ranch as a business to at least some extent. As such, the UTPA appears at least potentially applicable to the complained-of conduct. *See* Or. Rev. Stat. 646.608(1).

As to the moving defendants' argument that the racketeering claims cannot survive dismissal on their merits, I disagree with the moving defendants' argument that Wickenkamp has

Page 38 - FINDINGS AND RECOMMENDATION

failed to allege concrete injury to Judith flowing from the complained-of conduct. Judith has alleged economic losses in connection with her purchase of the Imnaha River ranch, her efforts to run it as a business, and its subsequent sale at auction.

## V.     FATC's Entitlement to UTPA Fees

FATC argues that it is entitled to award of its attorney fees reasonably incurred in connection with litigating Wickenkamp's UTPA claim against it (her seventh claim for relief). Entitlement to fees in an action brought under UTPA is governed by Or. Rev. Stat. 646.638(3), which provides that "[t]he court may award reasonable attorney fees and costs at trial and on appeal to a prevailing plaintiff in an action under this section," and further that "[t]he court may award reasonable attorney fees and costs at trial and on appeal to a prevailing defendant only if the court finds that an objectively reasonable basis for bringing the action or asserting the ground for appeal did not exist." Or. Rev. Stat. 646.638(3) (emphasis supplied).

FATC takes the position that it is entitled to fees in connection with Wickenkamp's UTPA claim against it because that claim was clearly time-barred. However, as alleged, the claim was only to a limited extent based on conduct occurring outside the statute of limitations; to the extent not so premised, it is subject to dismissal without prejudice on grounds of standing or of judicial estoppel, and the court will not consider its merits. Because in no event will the court make a finding as to whether the UTPA claim has a reasonable basis to the extent premised on conduct not related to the purchase of the Imnaha River ranch, the court should not award FATC its fees pursuant to Section 638(3).

## VI.     Cogency and Clarity of Wickenkamp's Allegations

The moving defendants argue that all of Wickenkamp's claims are subject to dismissal

Page 39 - FINDINGS AND RECOMMENDATION

with prejudice for violation of the Federal Civil Procedure Rule 8(a) mandate that pleadings contain short and plain statements of claims. It is the moving defendants' position that, because Wickenkamp was at one time a licensed attorney (now disbarred), she should be held to a high pleading standard not normally applicable to *pro se* litigants, such that her claims should be summarily dismissed without an opportunity to amend her pleading to state her allegations more cogently or clearly.

I disagree that the claims are subject to dismissal with prejudice at this stage of these proceedings, where the court has not yet admonished Wickenkamp for the state of her pleading. However, I agree with the moving defendants that Wickenkamp's second amended complaint is rambling, lacks cogency, contains internal inconsistencies, and is at times incomprehensible.

For the foregoing reasons, to the extent, if any, that the court may find that any claim as to which Wickenkamp has standing and faces no judicial estoppel barrier either survives dismissal or is subject to dismissal only without prejudice, Wickenkamp should be ordered to amend her pleading to restate such claim in a manner compliant with Rule 8(a).

**VII. Service**

As noted above, there is no suggestion in the record that Wickenkamp has served any defendant herein other than the current moving defendants. To the extent that any claim asserted in this action survives dismissal, the court should order Wickenkamp to effect service on all defendants named in such claim that have not yet been served within thirty days or face summary dismissal of her claims to the extent alleged against any unserved defendant.

**CONCLUSION**

For the reasons set forth above, FATC's motion (#41) to dismiss and defendants AC3's

Page 40 - FINDINGS AND RECOMMENDATION

and Marilyn's motion (#44) to dismiss should each be granted in part and denied in part as discussed above and:

(i) all of Wickenkamp's claims asserted herein should be dismissed without prejudice for lack of standing;

(ii) in the alternative, each of Wickenkamp's claims to the extent not premised on Judith's purchase of the Imnaha River ranch should be dismissed without prejudice on judicial estoppel grounds, and each of her claims to the extent premised on Judith's purchase of the Imnaha River ranch should be dismissed with prejudice as incurably time-barred; or

(iii) in the further alternative, Wickenkamp's antitrust claim should be dismissed without prejudice on merits grounds; and, to the extent that any of Wickenkamp's claims as to which she has standing and faces no judicial estoppel barrier survives dismissal with prejudice, Wickenkamp should be directed to amend her pleading to restate such claim in a manner compliant with Federal Civil Procedure Rule 8(a) and to effect service within thirty days on any defendant named in such claim that has not yet been served.

A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

Page 41 - FINDINGS AND RECOMMENDATION

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 28th day of September, 2015.

Honorable Paul Papak
United States Magistrate Judge